## Moore v. Commonwealth.
## McCurry v. Commonwealth.
## Gearhart v. Commonwealth.

(Decided December 5, 1911.)

## Appeal from Floyd Circuit Court.

Criminal Law—Homicide—Conspiracy to Murder—Sufficiency of Evidence.—In a prosecution of several defendants jointly indicted for murder committed in pursuance of and during the continuance of a conspiracy to commit the crime, evidence examined and held sufficient to sustain a conviction.

HARKINS & HARKINS and HOPKINS & HOPKINS for appellants.

JAS. BREATHITT, Attorney General, CHAS. H. MORRIS and W. H. HAY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

These three appeals involve a consideration of practically the same facts and similar questions of law, and will be disposed of in one opinion.

The appellants and Nelson Moore were jointly indicted by the grand jury of Floyd County at its regular June term, 1910, for the wilful murder of Monroe Vance. The indictment charges that the appellant, Algernal Moore, fired the fatal shot that killed deceased, and that the other appellants, Jack McCurry and Silvester Gearhart, together with Nelson Moore, conspired with him to commit the crime. The indictment also charges Jack McCurry, Silvester Gearhart and Nelson Moore as aiders and abettors. Appellants each demanded a separate trial, which was granted. Each was convicted and his punishment fixed at confinement in the penitentiary for life. From the judgments of conviction they have appealed.

The homicide took place under the following circum-

stances: Monroe Vance, while working with his wife in their garden, and accompanied by their child about three years of age, was shot from ambush and killed, on March 28th, 1910. The killing took place at about one o'clock in the afternoon. As soon as he was shot, his wife, Lettie Vance, observed a small man, who had on a brown suit of clothes, leaving a stump about thirty yards distant. After proceeding a few yards he was joined by another man, larger than himself, who wore a dark suit of clothes. Mrs. Vance recognized the man who did the shooting as appellant, Algernal Moore. She afterwards identified appellant, Jack McCurry, as the man who joined Moore and proceeded with him to the woods over the hill.

Shortly after the killing some of the neighbors arrived. Two or three went to the stump pointed out by Mrs. Vance as the place from which the shot came, and discovered that the ground near by had been trampled down, and that there was a place in a hole in the stump about the size of a silver dollar that appeared and smelt as if it had been powder-burned. Several of the parties tracked the persons who left the stump. They found two different kinds of tracks, one which looked as if made by a six or seven shoe, and the other as if made by an eight or nine shoe. Subsequently, two of the parties continued the tracking until they reached the residence of Vaughan Moore, about a mile or three-quarters of a mile distant from the place of the killing.

Lee Jones, who went to the house of Silvester Gearhart on the morning of the killing, was requested by the women, shortly before twelve o'clock, to call Silvester and his companions to dinner. Silvester, Al and Nelson Moore and Jack McCurry had all gone up into the woods about a quarter of a mile distant to cut timber. When Jones went to call them, Silvester and Nelson responded and returned with him to Silvester's residence. He did not see Algernal or Jack McCurry at that time. According to the testimony of Lee Jones and other witnesses for the Commonwealth, Silvester and Nelson Moore remained at Silvester's house until nearly two o'clock. Then they returned to the woods. Lee Jones joined them shortly after that. When he arrived, Algernal and Jack McCurry had not returned. They did return, however, in about half an hour, and when he saw them they were coming from the direction of Monroe Vance's house, and appeared to be warm and tired. Algernal, who had

carried his 32-Winchester rifle with him when he went to work that morning, had it in his hands when Jones discovered him and Jack McCurry approaching. Jones examined the rifle, and claims that it had been recently discharged. He invited Algernal to join him in a shooting match, but Algernal declined, on the ground that he had only one cartridge. When Silvester and Nelson Moore returned to the woods they carried with them Algernal and Jack McCurry's dinner. When Algernal and Jack arrived they proceeded to eat their dinner. While there, Jack McCurry injured his foot and didn't do any more work. The entire party left the place of work about half-past three or four o'clock.

According to the witnesses for the Commonwealth, only one tree was felled during the morning. Appellants claim, however, that they cut, felled and sawed several trees. Several days after the killing the body of the deceased was exhumed and an autopsy held thereon. Near his hip bone was found a 32-Winchester bullet. This was the kind of a gun that Algernal carried.

Several weeks before the killing the deceased had reported Nelson Moore for moonshining, and had gone to Catlettsburg to appear as a witness against him. The case was continued until the May term, and deceased was recognized to appear at that term.

Quite a while before the killing, Frank Vance, a brother of the deceased, drove Silvester Gearhart's wife from her home, and was indicted, along with others, for the crime of confederating, and sentenced to the penitentiary. Through J. W. Hall, a lawyer, Monroe Vance was trying to secure a parol for his brother. Just before the killing, Hall came to where appellants were at work, and spoke to Silvester about signing the petition for the parol. Silvester referred to the Vances as damned sons of bitches, and said that Monroe could try to get Frank out, but that he would try to keep him in.

On Saturday before the killing Algernal called at the store of a merchant of the county and tried to buy some Winchester cartridges, but the merchant was unable to supply them.

Before the killing deceased and appellants were on bad terms. On one occasion, when deceased, in company with his father-in-law, was passing through Art McCurry's place to a meeting, they saw Nelson Moore, Algernal and Jack McCurry. Deceased's father-in-law spoke to Nelson, whereupon appellant replied in a very

rough manner. Finally, Nelson said, "If you don't quit passing through here and bothering us, we will kill you."

About three weeks prior to the killing, Tim Jones met Nelson Moore and Silvester Gearhart. Nelson said to Silvester "that Vance was going around with his head up, and needed a bullet in it, or would get a bullet in it; that, of course, he would not do it, but men would, or might."

Two weeks before the killing the witness, Alex. Howell, had a conversation with Silvester Gearhart. Silvester told him that he guessed he had been reported, and that Monroe Vance had done it. Silvester also said that, if he was reported, he had a gun that would shoot through a tree or anything.

Appellants were frequently seen together, and nearly always carried fire arms. On one occasion, a short time before the murder, Mrs. Vance and the deceased were passing Algernal Moore and Silvester Gearhart. Algernal held his hand in his breast, while Silvester had a weapon in his hand, and the attitude of both was threatening—so much so that Mrs. Vance hurried to the side of her husband in order to prevent his being killed.

According to the evidence of appellants, Silvester, some three or four days prior to the killing, asked Jack McCurry and Nelson Moore to help him to cut railing and paling timber. Nelson agreed to bring Algernal along. They went to the hollow where the work was to be done about eight o'clock in the morning. Algernal carried his Winchester rifle with him, as he always did, for the purpose of shooting squirrels. After reaching the place of work they felled several trees and proceeded to saw and roll the cuts down the hill. Algernal and Jack McCurry were working in the hollow, while Silvester and Nelson were working on the hill. When the witness, Jones, called them to dinner, Algernal and Jack declined to go, because they did not want to go into the house, as Mrs. Gearhart had been confined the night before. Silvester told them that he would bring them their dinner. This was agreed to, and Silvester and Nelson then departed for Silvester's home. They reached there at twelve o'clock, and remained there about an hour. Upon returning to the hollow, about one o'clock, they found Algernal and Jack McCurry there. A few minutes later they were joined by the witness, Jones. None of the appellants were present when the homicide took place, nor did they know anything about it until the information

was brought to them later, and each denied having entered into a conspiracy to murder Vance. While Silvester and Nelson were gone, Algernal and Jack remained there in the hollow and continued their work. Other witnesses testified to seeing them there during that time. Their witnesses testified that it was about three miles from Monroe Vance's place to the hollow where they were at work. The testimony of the Commonwealth is that it was only a mile and a half or two miles. According. to the testimony of appellants, Lettie Vance stated on the day of the killing that it was the "black Moores" that had done the killing; on another occasion she stated that it was Nelson Moore who did it; that she could recognize him by his "nancy walk." At still another time, she claimed it was Silvester and Nelson who did it.

The evidence further shows that Silvester Gearhart was the brother of Art McCurry, the mother of Jack McCurry, and that Nelson Moore was the husband of Delilah Moore, the daughter of Art McCurry, and that Nelson and Algernal are brothers.

It is insisted by counsel for appellants that the evidence is not sufficient to sustain a conviction. While it is true, that Mrs. Vance seems on the day of the killing to have been somewhat uncertain as to who fired the shot and who accompanied the person who fired the shot, yet when confronted by Algernal Moore and Jack McCurry, she recognized them as the two persons who were fleeing from the stump just after the shot was fired. Furthermore, she identified the clothing which they wore, and the weight of the evidence is that they had on the character of clothing she described on the day of the homicide. When we consider the fact that the relations between Silvester Gearhart and the Vances had been unfriendly, owing to the conduct of Frank Vance towards Silvester's wife, and the further fact that the deceased had reported Silvester and Nelson for moonshining and had gone to Catlettsburg to appear as a witness against Nelson, and the case had been continued until the May term, together with the fact that appellants always assumed a hostile attitude toward deceased; that they were heard to make threats, shortly before the killing, with reference to the deceased; that the appellants were closely related, were constantly together and upon the day of the killing were with each other in the woods; that Algernal and Jack were left alone while Silvester and

Nelson went to dinner; that the killing was done with a 32-Winchester rifle; that Algernal carried this kind of rifle and there was evidence that it had been recently discharged, and he said he had only one cartridge left, whereas he admitted having more shortly before that; that Algernal and Jack were seen coming from the direction of the Vances and the tracks discovered correspond with theirs, we conclude that the evidence is sufficient to sustain the verdict reached by the jury.

The question whether or not appellants conspired to murder deceased, and whether or not he was killed while the conspiracy existed and in pursuance thereof, was fairly submitted to the jury. The court also cautioned the jury, in the case of each appellant, not to consider statements made by his co-defendants not in his presence, unless they believed beyond a reasonable doubt that said statements, if made at all, were made after the conspiracy had been entered into, and while it existed.

Being unable to discover in the record before us any error prejudicial to the appellants, or any one of them, it follows that the judgment in each case should be affirmed, and it is, therefore, so ordered.