## Moore v. Commonwealth.

### (Decided October 31, 1912.)

### Appeal from Floyd Circuit Court.

Criminal Law—Murder—Conspiracy—Evidence—Weight and Sufficiency.—Evidence examined and held sufficient to support verdict of conviction.

HOPKINS & HOPKINS and HARKINS & HARKINS for appellant.

JAMES GARNETT, Attorney General, O. S. HOGAN, Assistant Attorney General and W. H. MAY for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This case is a companion to that of Moore, McCurry and Gearheart against the Commonwealth, found in 145 Ky., 695.

Appellant and the above named parties were jointly indicted for the assassination of one Monroe Vance. They demanded, and were given, separate trials. All were found guilty, and from the judgments pronounced upon those verdicts Algernal Moore, Jack McCurry and Silvester Gearheart prosecuted an appeal to this court, and, upon consideration, the judgment in each case was affirmed. Appellant being put upon his trial, a jury returned a verdict of guilty and fixed his punishment at life imprisonment, and he appeals and now seeks a reversal, primarily upon the ground that the verdict of the

jury is not supported by the evidence. We have carefully read the record and compared it with the record in the other cases. The evidence is the same in all of its material particulars. The same witnesses testified, who testified in those cases, except in this case, the Commonwealth introduced two additional witnesses, who gave damaging testimony against appellant. One of these witnesses was connected with the United States Marshal's office, and testified that, when he was taking appellant before the commissioner upon the charge of moonshining, appellant told him that the deceased might appear against him before the commissioner, but he never would appear any more against him. The other new witness, Tilden Collins, testified that Silvester Gearheart owed him five dollars upon a rifle, and that a short time before Monroe Vance was killed, appellant and Gearheart came to him, where he was working in a field, and wanted the gun, and he declined to give it up until the money was paid. Thereupon, appellant agreed to pay the five dollars, and later did so, in some sort of a trade. The testimony that was brought out upon the other trials, being the same as that produced upon this trial, having been fully considered and set out at length in the opinion referred to above, it will not be repeated here. It is sufficient to say that, in the former opinion, it was considered ample to support the finding of the jury as to those defendants and to justify the belief that a conspiracy was formed between appellant and his brother, Algernal Moore, Jack McCurry, appellant's brother-in-law, and Silvester Gearheart his uncle, to get rid of Monroe Vance, because the latter had caused the arrest of appellant upon the charge of moonshining, and when that evidence is supplemented by that of the witnesses, Eddington and Collins, we would certainly not feel warranted in disturbing the finding of the jury, on the ground that it is not supported by sufficient evidence. The examination and trial before the commissioner for moonshining had been held, and the final hearing postponed until sometime in May. Even prior to this time, there was a bad feeling between the Vance family and some of the Gearheart family, brought about by an assault made by Frank Vance, a brother of Monroe, upon the wife of Gearheart, which resulted in her leaving home. From the time appellant appeared before the commissioner, for his preliminary examination upon the

charge of moonshining, he and his brother, Al., his brother-in-law, McCurry, and his uncle, Gearheart, were constantly together, going around over the neighborhood, heavily armed, and giving vent, upon frequent occasions, to threats upon the life of Monroe Vance.

These four parties had been together constantly for two or three days before the day upon which the assassination took place. Upon the morning of that day, they all went upon the mountainside together, ostensibly to cut timber. Al. had his Winchester rifle. They all remained there together for a time, when Al. and McCurry departed, and were gone, certainly not less than two hours, and perhaps more. Later, they were seen coming back from in the direction of Monroe's home. The gun, which Al. carried was examined and found to have been recently fired. Mrs. Monroe Vance, who was with her husband at the time he was shot, testified that immediately after the shot was fired which killed her husband, she looked in the direction from which the sound came and saw a man, with gun in hand, running from a snag or stump on the hillside, and she identified him as Algernal Moore. A little further up the hillside, he was joined by another, whom she recognized as McCurry. The news of the assassination spread rapidly, the neighbors gathered in, and the sheriff arrived. Being advised by Mrs. Vance of the direction in which the assassins had gone, the posse tracked them for some distance and the tracks brought them practically to the point in the woods where the four had gone to cut timber that morning. The ground was soft and the tracks were easily followed; and the prints in the earth as to size and shape conformed in many essential particulars to the character of shoe worn by Algernal Moore and Jack McCurry. All of the accused denied any knowledge of the killing. They all swore that neither Algernal nor Jack had left the place where they were cutting this timber, during the entire day; and each denied, in toto, every conversation alleged to have been had by them, in which threats were made against the deceased. The bullet, which killed deceased was proven to be that fired from a thirty-two calibre gun, which was the size of the gun carried on that day by Algernal Moore. The evidence strongly supports the claim or theory of the Commonwealth that the actual shooting was done by Algernal Moore, in furtherance of

a plan previously agreed upon by appellant, Jack Mc-Curry and Silvester Gearheart.

Every essential element and ingredient of the crime, as charged in the indictment, finds support in the evidence. The accused had all been engaged in the illicit manufacture and sale of liquor. Deceased had already caused the arrest of appellant; and the others understood that he had informed the Government officers as to them also. This conduct on the part of the deceased, augmented by the ill feeling which they already had towards his family because of the misconduct of his brother, Frank, furnishes the motive for wanting to get him out of the way; and, if the many witnesses are to be believed, appellant and his accused associates were not at all careful as to the occasion, or persons present, when they made their declarations that he would be killed, or put out of the way, or would not testify, or expressions of a kindred nature, which, when considered in the light of the attendant circumstances, undoubtedly would warrant the jury in finding that, in the assassination of Monroe Vance, the purpose and plan of appellant and his associates to prevent him from testifying against them, found its culmination.

No complaint is made of the instructions. Indeed, none could well be made, for, save the substitution of the name of appellant for that of his associates, the instructions given upon his trial, were those approved upon the appeal by his associates. We have read the record, and find no ground for reversal.

Judgment affirmed.